**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| CHRISTOPHER SOGHOIAN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| OFFICE OF MANAGEMENT | ) |
| AND BUDGET, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

Civil Action No. 1:11-cv-02203-ABJ

_____

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OMB'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ...................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.............................................1

    A.    Background Of The Intellectual Property Enforcement
          Coordinator And The Graduated Response Agreements ........................1

    B.     FOIA Request And Subsequent Litigation ...........................................2

STANDARD OF REVIEW ...................................................................................4

ARGUMENT ........................................................................................................4

I.    OMB PROPERLY WITHHELD CONFIDENTIAL COMMERCIAL
     INFORMATION UNDER EXEMPTION 4............................................................4

    A.     The Redacted Information Is Commercial............................................5

    B.     The Redacted Information Was Obtained From A Person ...................6

    C.     The Redacted Information Is Confidential ...........................................7

          1.     The withheld information was voluntarily submitted
                and is of a kind not customarily released to the public..............7

          2.     The release of this information would cause substantial
                competitive harm to the RIAA and its members .........................8

II.    OMB PROPERLY WITHHELD DELIBERATIVE INFORMATION UNDER
      EXEMPTION 5 ...................................................................................................10

    A.     The Administration's Response To "Graduated Response"
          Agreements .......................................................................................12

    B.     The Joint Strategic Plan ...................................................................15

    C.     France's Response To Online Copyright Issues ..................................15

III.    OMB RELEASED ALL REASONABLY SEGREGABLE NON-EXEMPT
       INFORMATION..................................................................................................16

CONCLUSION..........................................................................................................................18

## TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Adionser v. DOJ*,
    811 F. Supp. 2d 284 (D.D.C. 2011) .................................................................17

*Allnet Communication Services, Inc. v. FCC*,
    800 F. Supp. 984 (D.D.C. 1992) ......................................................................6

*In re Apollo Group, Inc. Securities Litigation*,
    251 F.R.D. 12 (D.D.C. 2008) (quotations omitted) ................................13

*Baker & Hostetler LLP v. Dep't of Commerce*,
    473 F.3d 312 (D.C. Cir. 2006) ........................................................................5

*Chemical Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*,
    600 F. Supp. 114 (D.D.C. 1984) ...................................................................12

*Citizens for Resp. and Ethics in Washington v. DHS*,
    514 F. Supp. 2d 36 (D.D.C. 2007) ...............................................................13

*Coastal States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980). " ...................................................................11

*Critical Mass Energy Project v. Nuclear Regulatory Com'n*,
    975 F.2d 871 (D.C. Cir. 1992) ...............................................................6, 7, 8

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
    532 U.S. 1 (2001) ...........................................................................................11

*Diamond v. Atwood*,
    43 F.3d 1538 (D.C. Cir. 1995) ........................................................................3

*Dudman Comms. Corp. v. Dep't of Air Force*,
    815 F.2d 1565 (D.C. Cir. 1987) ...................................................................13

*EPA v. Mink*,
    410 U.S. 73 (1973) .........................................................................................11

*Essex Electro Engineers, Inc. v. Sec'y of Army*,
    686 F. Supp. 2d 91 (D.D.C. 2010) ...........................................................9, 10

*Exxon Corp. v. Dep' t of Energy*,

585 F. Supp. 690 (D.D.C. 1983) ...........................................................................14

*Formaldehyde Inst. v. HHS,*
889 F.2d 1118 (D.C. Cir. 1989) ...........................................................................12

*Gulf & W. Indus., Inc. v. United States*,
615 F.2d 527 (D.C. Cir. 1979) .............................................................................9

*Gutman v. U.S. Dept. of Justice,*
238 F. Supp. 2d 284 (D.D.C. 2003) ...............................................................14, 15

*Hamilton Sec. Group v. Dep't of Housing & Urban Dev.*,
106 F. Supp. 2d 23 (D.D.C. 2000) ..................................................................15, 16

*Hodge v. FBI,*
764 F. Supp. 2d 134 (D.D.C. 2011) .....................................................................17

*Hornbostel v. U.S. Department of Interior*,
305 F. Supp. 2d 21 (D.D.C. 2003)…………………………………………………….. 16

*Johnson v. Executive Office for U.S. Attorneys,*
310 F.3d 771 (D.C. Cir. 2002) ............................................................................17

*Juarez v. DOJ,*
518 F.3d 54 (D.C. Cir. 2008) ..............................................................................17

*Judicial Watch, Inc. v. DOE,*
310 F. Supp. 2d 271 (D.D.C. 2004), *aff'd in part & rev'd in part on other grounds*,
412 F.3d 125 (D.C. Cir. 2005) ..............................................................................6

*Judicial Watch, Inc. v. U.S. Dep't of Treasury,*
802 F. Supp. 2d 185 (D.D.C. 2011) .......................................................................6

*Judicial Watch v. Export-Import Bank*,
108 F. Supp. 2d 19 (D.D.C. 2000) .......................................................................12

*Kahn v. Fed. Motor Carrier Safety Admin.*,
648 F. Supp. 2d 31 (D.D.C. 2009) .........................................................................9

*Marzen v. HHS*,
825 F.2d 1148 (7th Cir. 1987) ............................................................................13

*Mead Data Cent., Inc. v. U.S. Dept. of Air Force*,
566 F.2d 242 (D.C. Cir. 1977) ............................................................................16

iv

*Montrose Chemical Corp. of California v. Train*,
  491 F.2d 63 (D.C. Cir.1974) ……………………………………………………… 18

*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975)...........................................................................................10

*Nat'l Parks & Conservation Ass'n v. Morton*,
  498 F.2d 765 (D.C. Cir. 1974) ..........................................................................7

*National Wildlife Federation v. U.S. Forest Service*,
  861 F.2d 1114 (9th Cir. 1988) ..........................................................................18

*People for the American Way Foundation v. National Park Service*,
  503 F. Supp. 2d 284 (D.D.C. 2007) ..................................................................13

*Pub. Citizen Health Research Group v. FDA*,
  704 F.2d 1280 (D.C. Cir. 1983) ...................................................................5, 8, 9

*Quarles v. Dep't of Navy*,
  893 F.2d 390 (D.C. Cir. 1990) ..........................................................................16

*Reliant Energy Power Generation, Inc. v. FERC*,
  520 F. Supp. 2d 194 (D.D.C. 2007) ...................................................................4

*Russell v. Dep't of Air Force*,
  682 F.2d 1045 (D.C. Cir. 1982) ........................................................................14

*Sussman v. U.S. Marshals Service*,
  494 F.3d 1106 (D.C. Cir. 2007) ........................................................................17

*Suzhou Yuanda Enterprise, Co. v. Customs & Border Protection*,
  404 F. Supp. 2d 9 (D.D.C. 2005) ......................................................................10

*Techserve Alliance v. Napolitano*,
  803 F. Supp. 2d 16 (D.D.C. 2011)…………………………………………….. 16

*Timken Co. v. U.S. Customs Service*,
  531 F. Supp. 194 (D.D.C. 1981) .......................................................................10

*Vaughn v. Rosen*,
  523 F.2d 1136 (D.C. Cir. 1975) ...................................................................12, 15

v

## STATUTES

5 U.S.C. § 551................................................................................................................1

5 U.S.C. § 551(2)............................................................................................................6

5 U.S.C. § 552(b)(4) ................................................................................................3, 4, 5

5 U.S.C. § 552(b)(5) ..............................................................................................3, 6, 10

15 U.S.C. § 8111............................................................................................................1

15 U.S.C. § 8113.......................................................................................................1, 2

Pub. L. No. 93-502, 88 Stat. 1561 (1974)...................................................................11

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 56(a) .....................................................................................................4

## INTRODUCTION

Plaintiff Christopher Soghoian ("Plaintiff") has sued Defendant Office of Management and Budget ("OMB") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), for certain communications relating to the "graduated response" to online copyright infringement.  Because OMB has conducted an adequate search for records, and produced all responsive documents that are not exempt from release under FOIA, summary judgment should be granted in OMB's favor.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  Background Of The Intellectual Property Enforcement Coordinator And The Graduated Response Agreements

Created by Congress in 2008, the Intellectual Property Enforcement Coordinator ("IPEC") is generally responsible for coordinating the development and implementation of intellectual property policy across the Executive Branch.  *See generally* 15 U.S.C. § 8111; Ex. 3, Espinel Decl. ¶¶ 1-4.  The IPEC, who is appointed by the President with the advice and consent of the Senate, serves within the Executive Office of the President and is located in the OMB.  Espinel Decl. ¶¶ 1-2.  Victoria Espinel is the first IPEC, having been appointed and confirmed in 2009.  *Id.* ¶ 1.

To carry out its statutory mission, the IPEC works in close consultation with various federal agencies that address intellectual property issues.  *See* 15 U.S.C. § 8111; Espinel Decl. ¶¶ 3-4.  The IPEC also interacts regularly with intellectual property stakeholders in the private sector, including through meetings, speeches, and emails, as well as through more formal methods.  *Id.* at ¶ 4. The IPEC has the specific statutory responsibility to coordinate the development and implementation of the Joint Strategic Plan against counterfeiting and infringement.  *See* 15 U.S.C. §§ 8111(b)(1), 8113(c);

1

Espinel Decl. ¶¶ 3-4.  The Joint Strategic Plan seeks to reduce counterfeit and infringing goods, both domestically and internationally, through a variety of methods.  *See* 15 U.S.C. § 8113.

One issue that IPEC Espinel has worked on recently is known as the "graduated response" to online copyright infringement.  The term "graduated response" generally refers to the voluntary agreements between several leading internet service providers ("ISPs") and representatives of the music and movie industries to reduce online intellectual property infringement.  In these agreements, all entities have agreed to take a "graduated response" to infringing activity, using a progressively escalating response system designed to deter infringing activity and promote legitimate consumption of copyrighted content.  *See* Espinel Decl. ¶ 9; Ex. 2, Sheckler Decl.¶ 5.

### B.   FOIA Request And Subsequent Litigation

On June 23, 2011, Plaintiff made the following FOIA request:

> I request copies of all communications, documents and notes from meetings related to discussions between the Office of the U.S. Intellectual Property Enforcement Coordinator and any federal agency, the National Cable and Telecommunications Association (NCTA), AT&T, Verizon, Time Warner Cable, CableVision, Charter Communications, Comcast, and Qwest Communications, The Recording Industry Association of America (RIAA) and Motion Picture Association of America (MPAA), and any individual record and movie studios regarding "graduated responses" to subscriber copyright infringement.
>
> The scope of this request is for all records created between December 1, 2009 and June 22, 2011.  If possible, I would like to receive the information in electronic format.

Ex. 4, FOIA Request; Espinel Decl. ¶ 5.

On September 30, 2011, OMB responded to Plaintiff's FOIA request.  Ex. 5, OMB Resonse To FOIA Request.  OMB enclosed 189 pages of responsive documents.  OMB withheld portions of those documents under 5 U.S.C. § 552(b)(4), § (b)(5) and § (b)(6).  OMB withheld in full an additional 16 pages under 5 U.S.C. § 552(b)(5).  Espinel Decl. ¶ 6.

On October 11, 2011, Plaintiff administratively appealed OMB's determination to withhold and redact requested records.  Ex. 6, Administrative FOIA Appeal; Espinel Decl. ¶ 7.  OMB received Plaintiff's appeal on October 11, 2011.  OMB responded to the appeal on December 19, 2011, and released additional portions of 18 pages, including portions of 15 pages that were previously redacted in full.  OMB withheld in full 1 page under 5 U.S.C. § 552(b)(5).  Espinel Decl. ¶ 7.  As a result of the additional disclosures, OMB is currently withholding 1 page in full under 5 U.S.C. § 552(b)(5)  and portions of 59 pages under Exemptions 4, 5, and 6.  *See* Ex. 1, *Vaughn* Index.[1]

Since Plaintiff filed the present lawsuit, attorneys for the parties have communicated on multiple occasions regarding the issues in the case.  Through these discussions, the parties have narrowed the issues in dispute to the Exemption 4 and Exemption 5 withholdings.[2]  OMB now moves for summary judgment on all remaining issues.

---

[1]  The *Vaughn* Index refers to each document by its "OMB No."  This page number is located at the top-left corner of each page.  *See* Ex. 8, Redacted FOIA Documents.

[2]  Plaintiff does not challenge the adequacy of OMB's search.  Plaintiff also does not challenge redactions made pursuant to Exemption 6 (OMB Nos. 1, 3, 18, 35-38, 49-60), and the redactions made of non-responsive information (OMB Nos. 1, 2, 33, 35, 37, 46, and 60).

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). FOIA actions are typically resolved on summary judgment. *Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007). A court reviews an agency's response to a FOIA request de novo. *See* 5 U.S.C. § 552(a)(4)(B).

## ARGUMENT

I.  **OMB PROPERLY WITHHELD CONFIDENTIAL COMMERCIAL INFORMATION UNDER EXEMPTION 4**

Under Exemption 4, OMB withheld in part drafts of a contractual agreement known as the Memorandum of Understanding ("Memorandum"). Sheckler Decl. ¶¶ 4, 7; *see also Vaughn* Index at 1-32. As the Sheckler Declaration explains, the Memorandum of Understanding is a contractual agreement entered into by the Recording Industry Association of America ("RIAA") and certain of its members, the Motion Picture Association of America and certain of its members, and several leading internet service providers ("ISPs"). Sheckler Decl. ¶ 5. The Memorandum creates a framework to address certain forms of online copyright infringement. *Id.* In its final version, signed on July 6, 2011, all parties to the contract agreed to, among other things, develop a "Copyright Alert Program" to educate consumers about copyright, deter peer-to-peer copyright infringement over the internet, and promote the legitimate consumption of copyrighted material. *Id.* The final version of the Memorandum has been disclosed publicly. *Id.* at ¶ 6. This case concerns provisions of the drafts of the Memorandum of

Understanding that were not included in the final agreement. *Id* at ¶ 7. OMB withheld these provisions pursuant to Exemption 4.

Exemption 4 protects records from disclosure that contain "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). This exemption covers two distinct categories of information in federal agency records: trade secrets and confidential commercial or financial information. In this case, OMB has withheld, in part, drafts of the Memorandum of Understanding pursuant to the second category of information specified in § 552(b)(4): information that is "(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." *Pub. Citizen Health Research Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983). This withholding was proper.

**A. The Redacted Information Is Commercial**

The information is commercial. Sheckler Decl. ¶¶ 2, 9-12; *see also Vaughn* Index 1-32. Records are commercial so long as the submitter has a "commercial interest" in them. *Pub. Citizen*, 704 F.2d at 1290; *see also Baker & Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 319 (D.C. Cir. 2006) (defining "commercial" broadly to include not only "records that reveal basic commercial operations or relate to the income-producing aspects of a business" but also situations "when the provider of the information has a commercial interest in the information submitted to the agency" (internal quotations omitted)). As the Sheckler Declaration explains, RIAA has a strong commercial interest in the redacted information. Many of the redacted provisions refer to the potential costs or allocations of risk associated with the proposed Copyright Alert Program, or provide opinions or recommendations that were not included in the final

agreement.  Sheckler Decl. ¶ 9; *see also Vaughn* Index 1-32.  Disclosure of these redacted

provisions would give RIAA's competitors an unfair advantage in future copyright

negotiations, and provide a "road map" on how to engage more effectively in infringing

activity.  Sheckler Decl. ¶¶ 10-11.  Because RIAA and its members have a clear

"commercial interest" in the redacted information, this information is "commercial"

within the meaning of Exemption 4.  *See, e.g., Judicial Watch, Inc. v. U.S. Dep't of

Treasury*, 802 F. Supp. 2d 185, 205 (D.D.C. 2011) (finding that "private, confidential

materials related to corporate strategy" was commercial); *Judicial Watch, Inc. v. DOE*,

310 F. Supp. 2d 271, 308 (D.D.C. 2004) (holding that reports that "constitute work done

for clients" are commercial), *aff'd in part & rev'd in part on other grounds*, 412 F.3d 125

(D.C. Cir. 2005).

### B.  The Redacted Information Was Obtained From A Person

The redacted information was provided to OMB by a "person."  FOIA defines

"person" very broadly, to include, inter alia, a "corporation" and "public or private

organization."  5 U.S.C. § 551(2); *Allnet Commc'n Servs., Inc. v. FCC*, 800 F. Supp. 984,

988 (D.D.C. 1992) (noting that "'person' refers to a wide range of entities including

corporations, associations and public or private organizations other than agencies").  In

this case, the submitters of the information are the RIAA, which is a trade association,

and its member Universal Music Group Inc., which is a corporation.  *See* Sheckler Decl.

¶¶ 3, 8.  Both the RIAA and the corporation RIAA represents are "person[s]" within the

meaning of Exemption 4.  *See* 5 U.S.C. § 551(2); *Critical Mass Energy Project v.

Nuclear Regulatory Com'n*, 975 F.2d 871, 874, 879 (D.C. Cir. 1992) (en banc) (applying

Exemption 4 to industry group organized as a nonprofit corporation).

### C.  The Redacted Information Is Confidential

Finally, the information is "confidential."  Different tests for confidentiality apply depending on how the commercial information is obtained by the government.  If private commercial information is provided to the government voluntarily, it is confidential for purposes of Exemption 4 "if it is of a kind that would customarily not be released to the public by the person from whom it was obtained."  *Critical Mass*, 975 F.2d at 879. Private commercial information that has been submitted to the government under compulsion is confidential for purposes of Exemption 4 if disclosure is likely either (1) "to cause substantial harm to the competitive position of the person from whom the information was obtained" or (2) "to impair the Government's ability to obtain necessary information in the future."  *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974) (footnote omitted); *see also Critical Mass*, 975 F.2d at 879 (holding that *National Parks* test applies when a person is required to provide private commercial information to the government).

OMB properly withheld the contested information under Exemption 4 because it was voluntarily submitted and is of a kind not customarily released to the public. However, in the alternative, even if the information is instead analyzed under the more stringent test for information submitted under compulsion, the information is properly withheld because its release would cause substantial competitive harm to the RIAA and its members.

### 1.  The withheld information was voluntarily submitted and is of a kind not customarily released to the public

Information is categorically exempt from disclosure if it (1) is voluntarily provided and (2) "is of a kind that would customarily not be released to the public."

*Critical Mass*, 975 F.2d at 879.  The information redacted under Exemption 4 meets both criteria.

First, neither RIAA nor its member, UMG, was compelled to submit the information.  RIAA and UMG disclosed the drafts of the Memorandum of Understanding to the IPEC voluntarily and in confidence to keep the IPEC informed about the status of contractual negotiations to develop voluntary practices to deter certain forms of online copyright infringement.  Sheckler Decl. ¶ 8; Espinel Decl. ¶ 25.  IPEC does not have the legal authority to compel the provision of that information.  Espinel Decl. ¶ 25.

Second, the information is of a kind not customarily released to the public.  Sheckler Decl. ¶¶ 2, 10.  The RIAA and its members do not customarily disclose preliminary contractual negotiations to the public.  These types of negotiations reflect preliminary views that may have changed in the final agreement, and could give competitors and adversaries an unfair advantage in future discussions.  *Id.*  ¶¶ 10-11.  Disclosure of the preliminary negotiations would also give RIAA's adversaries a competitive advantage by providing a more detailed "road map" on how to effectively engage in copyright infringement.  *Id.* ¶ 11.  Therefore, the redacted information in the Memorandum of Understanding is precisely the kind of information that RIAA and its members do not customarily release to the public.  Because RIAA voluntarily submitted the information to IPEC and customarily does not disclose the information to the public, OMB properly withheld the information under Exemption 4.

### 2.  The release of this information would cause substantial competitive harm to the RIAA and its members

Although the information should be analyzed as a voluntary submission, the information was properly redacted even if it is instead assessed under the more

9

demanding standard for confidentiality applied to required submissions because its release would cause substantial competitive harm to the submitter.

The D.C. Circuit does not require that a party show "actual competitive harm" in order to show a likelihood of substantial competitive harm. *Pub. Citizen Health Research Grp. v. FDA*, 704 F.2d 1280, 1291 (D.C. Cir. 1983) (citation omitted). Rather, "evidence revealing '[a]ctual competition and the likelihood of substantial competitive injury' is sufficient to bring commercial information within the realm of confidentiality." *Kahn v. Fed. Motor Carrier Safety Admin.*, 648 F. Supp. 2d 31, 36 (D.D.C. 2009) (quoting *Pub. Citizen*, 704 F.2d at 1291). Although conclusory and generalized allegations of substantial competitive harm are insufficient to justify the application of Exemption 4, "the court need not conduct a sophisticated economic analysis of the likely effects of disclosure." *Pub. Citizen*, 704 F.2d at 1291 (citations omitted). "[E]vidence supporting the existence of potential competitive injury or economic harm is enough for the exemption to apply." *Essex Electro Eng'rs, Inc. v. Sec'y of Army*, 686 F. Supp. 2d 91, 93-94 (D.D.C. 2010) (citing *Gulf & W. Indus., Inc. v. United States*, 615 F.2d 527, 530 (D.C. Cir. 1979)).

Disclosure of the redacted provisions of the Memorandum of Understanding would likely cause substantial competitive and economic harm to RIAA and its members. As noted, the RIAA is engaged in discussions with other intermediaries and other interested parties to deter copyright infringement, and disclosure of the redacted information would likely significantly harm RIAA's position in those discussions. Sheckler Decl. ¶¶ 10-11. In addition, disclosure would give RIAA's adversaries a competitive advantage by providing a more detailed "road map" on how to effectively

engage in copyright infringement. *Id.*¶ 11*; see also Suzhou Yuanda Enter., Co. v. Customs & Border Prot.*, 404 F. Supp. 2d 9, 13 (D.D.C. 2005) (holding that agency "demonstrated here that releasing the withheld information would cause substantial competitive harm . . .because it is 'not the type of information a commercial entity would give to a competitor.'"). It has been accepted for decades that Exemption 4 protects against such harm. *Timken Co. v. U.S. Customs Serv.*, 531 F. Supp. 194, 201 (D.D.C. 1981) (finding Exemption 4 protects from disclosure marketing strategies, among other things, because release "would allow competitors to discern the strengths and weaknesses of the marketing strategies of these companies and target their weak points for attack. Competitors also could imitate the successful policies of these companies."); *see also Essex Electro*, 686 F. Supp. 2d at 94 (finding agency demonstrated risk of competitive harm "because the requested information could reveal Fidelity's business strategy and cost structure"). Because the release of preliminary contractual negotiations could undermine RIAA's future discussions to deter copyright infringement and give adversaries a competitive advantage, there is a likelihood of substantial competitive harm. Therefore, OMB properly withheld portions of the drafts of the Memorandum of Understanding under Exemption 4.

## II.     OMB PROPERLY WITHHELD DELIBERATIVE INFORMATION UNDER EXEMPTION 5

Exemption 5 exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). In particular, it "exempt[s] those documents . . . [that are] normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). Exemption 5 incorporates the common law and executive

privileges, including the deliberative process privilege, the attorney-client privilege, and the work product doctrine.  In this case, OMB has withheld materials, in whole and in part, under Exemption 5 because they are protected under the deliberative process privilege.

Documents subject to the deliberative process privilege and therefore exempt from release include those "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB*, 421 U.S. at 150.  As the Supreme Court has explained:

> The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (internal quotation marks and citations omitted).  "[E]fficiency of Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to 'operate in a fishbowl.'" *EPA v. Mink*, 410 U.S. 73, 87 (1973) (abrogated by statute on other grounds, Pub. L. No. 93-502, 88 Stat. 1561 (1974)).

"In deciding whether a document should be protected by the privilege [courts] look to whether the document is 'predecisional' [—] whether it was generated before the adoption of an agency policy [—] and whether the document is 'deliberative' [—] whether it reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  "To establish that a document is predecisional, the agency need not point to an agency final decision, but merely establish what deliberative process is involved, and the role that the documents at

issue played in that process." *Judicial Watch v. Export-Import Bank*, 108 F. Supp. 2d 19, 35 (D.D.C. 2000) (citing *Formaldehyde Inst. v. HHS*, 889 F.2d 1118, 1223 (D.C. Cir. 1989)). In addition, "[t]here should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take — of the deliberative process — by which the decision itself is made.'" *Chemical Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975)). The agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions.'" *Id.* at 118 (quoting *NLRB*, 421 U.S. at 151).

In this case, OMB has identified three general categories of records that are protected under the deliberative process privilege and therefore are properly withheld on the basis of FOIA Exemption 5: (1) discussions regarding the general principles for an Administration response to voluntary agreements reached between ISPs and content holders to reduce online piracy, including discussion of a draft memorandum explaining those principles (OMB Nos. 34, 37-48); (2) discussions of IPEC's Joint Strategic Plan (OMB Nos. 35, 51-58 ); and (3) a question on the status of France's response to piracy issues (OMB No. 33). Espinel Decl. ¶¶ 12-15; *Vaughn* Index. Each category of materials, and the corresponding basis for protection under the deliberative process privilege, are discussed below.[3]

## A.  The Administration's Response To "Graduated Response" Agreements

"The first category consists of emails between various agencies and components of the Executive Office of the President regarding the nature of the general principles for

---

[3]  All of the records withheld under Exemption 5 meet the threshold requirement of being inter-agency or intra-agency memorandums or letters. Espinel Decl. ¶ 11; *Vaughn* Index.

an Administration response to an agreement that was under consideration and might be reached between ISPs and content holders to reduce online piracy, the manner in which they should be expressed, and the content of a memorandum providing information about those principles and how they would inform an Administration response."  Espinel Decl. ¶ 13.  This category "also includes drafts of the memorandum, as well as a draft of the principles."  *Id.*  "In these emails and drafts, employees were engaging in deliberative conversations regarding draft documents in order to help determine the Administration's response to an ongoing policy issue."  *Id.  See Vaughn* Index 34, 37-48.

These e-mails and drafts are protected under the deliberative process privilege because both draft material and the drafting process itself are inherently predecisional and deliberative.  *See, e.g., Dudman Comms. Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1569 (D.C. Cir. 1987) (disclosure of "decisions to insert or delete material or to change a draft's focus or emphasis — would stifle the creative thinking and candid exchange of ideas necessary to produce good historical work"); *Marzen v. HHS*, 825 F.2d 1148, 1155 (7th Cir. 1987) (Exemption 5 "protects not only the opinions, comments and recommendations in the draft, but also the process itself"); *In re Apollo Group, Inc. Sec. Litig.*, 251 F.R.D. 12, 31 (D.D.C. 2008) ("[D]raft documents by their very nature, are typically predecisional and deliberative, because they reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation either by their authors or by superiors.") (non-FOIA case) (quotations omitted); *Citizens for Resp. and Ethics in Washington v. DHS*, 514 F. Supp. 2d 36, 46 (D.D.C. 2007) (applying privilege to draft "situation reports"); *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 303 (D.D.C. 2007) ("drafts are commonly found exempt under the

deliberative process exemption."); *Exxon Corp. v. Dep' t of Energy*, 585 F. Supp. 690, 697-98 (D.D.C. 1983) ("[d]raft documents by their very nature, are typically predecisional and deliberative").  Disclosure of draft materials would expose individual employees' contributions to the drafting process to public scrutiny, which would likely inhibit deliberations, and, ultimately, inhibit the frank and candid exchange of information and expression of ideas, both within OMB as well as between OMB and other Executive Branch agencies and offices.  Espinel Decl.  ¶¶ 16-17, 20; *see, e.g., Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (recognizing that disclosure of draft manuscript could stifle candor in the drafting process and lead to confusion of the public).

In addition to being drafts, these materials include summaries, discussions, advice, recommendations, and analyses.  Espinel Decl. ¶ 17, 20.  Such communications "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated" fall squarely within the scope of the deliberative process privilege.  *Gutman v. U.S. Dept. of Justice*, 238 F. Supp. 2d 284, 292-93 (D.D.C. 2003); *Hamilton Sec. Grp. v. Dep't of Housing & Urban Dev.*, 106 F. Supp. 2d 23, 31 (D.D.C. 2000) (deliberative documents include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinion of the writer rather than the policy of the agency").  Thus, OMB properly withheld these e-mails and drafts as protected by the deliberative process privilege.

### B.  The Joint Strategic Plan

This category "consists of emails that discussed IPEC's Joint Strategic Plan, which was made public once it was finalized, and is available on OMB's website (http://www.whitehouse.gov/omb/intellectualproperty)."  Espinel Decl. ¶ 14. "Discussions about the draft Plan involved issues related to general principles for the Administration to encourage and respond to voluntary agreements to reduce online piracy and counterfeiting, including the nature of the Administration's response to 'graduated response.' "  *Id.*   "In these emails, employees were engaging in deliberative conversations regarding draft documents in order to help determine the Administration's response to an ongoing policy issue."  Espinel Decl. ¶ 14.  *See Vaughn* Index 35, 51-58.

These emails and draft documents are protected by the deliberative process privilege.  As discussed above, draft material and the drafting process itself are inherently predecisional and deliberative. *See* Section II.A.  Further, these emails are quintessentially predecisional and deliberative:  They contain summaries, discussions, advice, recommendations, and analyses offered to help determine the Administration's response to an ongoing policy issue.  Espinel Decl. ¶¶ 14, 17, 20;  *see also Gutman*, 238 F. Supp. 2d at 292-93; *Hamilton Sec. Grp*, 106 F. Supp. 2d at 31.  Thus, OMB properly withheld these emails as protected by the deliberative process privilege.

### C.  France's Response To Online Copyright Issues

This category "consists of a single two-line email in which [IPEC Espinel] posed a question to colleagues within the Executive Office of the President on the status of France's response to piracy issues."  Espinel Decl. ¶ 15.  "OMB has released the email and redacted only the portion that explains to my colleagues the reason I asked the

16

question." *Id.* "In this conversation, I was deliberating with colleagues in order to help determine the Administration's response to an ongoing policy issue." *Id.  See Vaughn* Index 33.

The single email discussing France's response to piracy issues is protected by the deliberative process privilege.  The email is predecisional because it reflects debate about an impending decision regarding the Administration's response to an ongoing policy issue.  Espinel Decl. ¶ 15; *see Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990) (materials are predecisional when "prepared in order to assist . . . in arriving at . . . decision[s]").  The email is also deliberative, as it reflects IPEC Espinel's mental impressions regarding an ongoing policy issue.  Espinel Decl. ¶ 15; *Vaughn* Index 33. *See, e.g., Techserve Alliance v. Napolitano*, 803 F. Supp. 2d 16, 26 (D.D.C. 2011) (The deliberative process privilege protects a "federal official's notes, reports and other mental impressions[.]") (citing *Hornbostel v. U.S. Department of Interior*, 305 F. Supp. 2d 21, 30–31 (D.D.C. 2003).  Disclosure of such material "would substantially inhibit and chill the internal deliberations of OMB officials and staff, as well as those of other Federal agencies and offices, that are an essential part of carrying out their respective missions and responsibilities."  Espinel Decl. ¶ 16.  Thus, OMB properly withheld in part this email as protected by the deliberative process privilege.

## III.   OMB RELEASED ALL REASONABLY SEGREGABLE NON-EXEMPT INFORMATION

Under FOIA, "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b).  Accordingly, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."  *Mead Data Cent., Inc. v.*

*U.S. Dept. of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).  A court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated."  *Juarez v. DOJ*, 518 F.3d 54, 61 (D.C. Cir. 2008) (internal citation omitted).

Here, the Espinel declaration explains that OMB withheld information only following "a careful, line-by-line review of each document withheld in full and in part to determine that there was no reasonably segregable factual or non-deliberative information responsive to plaintiff's request."  Espinel Decl. ¶ 21; *see also Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 776-77 (D.C. Cir. 2002) (holding that agency had demonstrated there was no reasonably segregable non-deliberative material when, among other things, it had submitted an affidavit by an agency official who stated that "she personally conducted a line-by-line review of each document withheld in full and determined that 'no documents contained releasable information which could be reasonably segregated from the nonreleasable portions.'"); *Adionser v. DOJ*, 811 F. Supp. 2d 284, 294-95 (D.D.C. 2011) (finding segregability obligation satisfied based on agency declaration that all reasonably segregable information was released).

Moreover, OMB has provided a detailed *Vaughn* Index that describes each portion of each challenged document withheld, establishing its commercial or deliberative nature.  *See Vaughn* Index.  This index establishes that OMB released all reasonably segregable, non-exempt information.  *See, e.g., Hodge v. FBI*, 764 F. Supp. 2d 134, 144 (D.D.C. 2011) ("Because the Hardy Declaration and annotations identify the

exemptions claimed for each individual document and, indeed, for each redaction, defendants have met their burden under the law of our Circuit.").

Finally, to the extent that any information in the Exemption 5 withholdings is "factual" in nature, that information is still exempt from disclosure:  These facts reflect the subjective judgment of the document's author and disclosure would expose OMB's decision-making process to public scrutiny.  Espinel Decl. ¶ 22; *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*,  861 F.2d 1114, 1119 (9th Cir. 1988) ("[E]ven if the content of a document is factual, if disclosure of the document would expose 'the decision-making process itself' to public scrutiny by revealing the agency's 'evaluation and analysis of the multitudinous facts,' the document would nonetheless be exempt from disclosure.") (citing *Montrose Chemical Corp. of California v. Train*, 491 F.2d 63, 68 (D.C. Cir.1974)).

Because OMB has shown that all reasonably segregable, non-exempt responsive information has been turned over, OMB is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, this Court should grant OMB's motion for summary judgment and dismiss Plaintiff's complaint with prejudice.


Respectfully Submitted:

STUART F. DELERY
Acting Assistant Attorney General

JOHN R. TYLER
Assistant Branch Director

/s/ Matthew A. Josephson
MATTHEW A. JOSEPHSON

19

Georgia Bar Number:  367216
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch

Attorneys for Defendant

DATED:  April 27, 2012