# Exhibit 3
# Declaration of Victoria Espinel

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHRISTOPHER SOGHOIAN )
)
         Plaintiff, )
)
v. )    Civil Action No. 1:11-cv-02203-ABJ
)
)
OFFICE OF MANAGEMENT )
AND BUDGET, )
)
)
         Defendant. )
)

## DECLARATION OF VICTORIA ESPINEL

I, Victoria Espinel, make the following declaration based on personal knowledge and information made available to me in the performance of my official duties:

**1.** I am the Intellectual Property Enforcement Coordinator (IPEC), which is a statutory position created by Congress in Title III of the Prioritizing Resources and Organization for Intellectual Property (PRO-IP) Act of 2008 (Public Law 110-403). By statute, the IPEC is appointed by the President, with the advice and consent of the Senate. *See* Section 301(a) of the PRO-IP Act, codified at 15 U.S.C. § 8111(a). I am the first IPEC, having been nominated by President Obama on September 25, 2009, and having been confirmed by the Senate on December 4, 2009. Prior to becoming the IPEC, I served at the Office of the US Trade Representative, starting in 2001 as the senior counsel for intellectual property issues and, from 2005 until 2007, as the first Assistant United States Trade Representative for Intellectual Property and Innovation.

1

**2.** By statute, the IPEC "serve[s] within the Executive Office of the President" (EOP), id., and is located in the Office of Management and Budget (OMB). Information about the IPEC is available on OMB's website at http://www.whitehouse.gov/omb/intellectualproperty.

**3.** By statute, Congress has assigned to the IPEC a set of general duties, which are specified at Section 301(b)(1) of the PRO-IP Act. 15 U.S.C. § 8111(b)(1). These duties are to:

"(A) chair the interagency intellectual property enforcement advisory committee established under subsection (b)(3)(A);

"(B) coordinate the development of the Joint Strategic Plan against counterfeiting and infringement by the advisory committee under section 303;

"(C) assist, at the request of the departments and agencies listed in subsection (b)(3)(A), in the implementation of the Joint Strategic Plan;

"(D) facilitate the issuance of policy guidance to departments and agencies on basic issues of policy and interpretation, to the extent necessary to assure the coordination of intellectual property enforcement policy and consistency with other law;

"(E) report to the President and report to Congress, to the extent consistent with law, regarding domestic and international intellectual property enforcement programs;

"(F) report to Congress, as provided in section 304, on the implementation of the Joint Strategic Plan, and make recommendations, if any and as appropriate, to Congress for improvements in Federal intellectual property laws and enforcement efforts; and

"(G) carry out such other functions as the President may direct."

This list of general duties is then followed, in the PRO-IP Act, by a provision entitled "Limitation on Authority," which states that "[t]he IPEC may not control or direct any law enforcement agency, including the Department of Justice, in the exercise of its investigative or prosecutorial authority." Section 301(b)(2) of the PRO-IP Act; 15 U.S.C. § 8111(b)(1).

**4.** As part of the IPEC's policy development role, I interact regularly with intellectual property stakeholders in the private sector, including through meetings, speeches, and emails, as well as through more formal methods such as Federal Register notices. In this regard, in addressing the development and implementation of the Joint Strategic Plan, the PRO-IP Act includes the following provision entitled "Responsibility of the IPEC":

> "(c) RESPONSIBILITY OF THE IPEC.—During the development of the joint strategic plan, the IPEC—
>
> > "(1) shall provide assistance to, and coordinate the meetings and efforts of, the appropriate officers and employees of departments and agencies represented on the advisory committee appointed under section 301(b)(3) who are involved in intellectual property enforcement; and
> >
> > "(2) may consult with private sector experts in intellectual property enforcement in furtherance of providing assistance to the members of the advisory committee appointed under section 301(b)(3)."

Section 303(c); 15 U.S.C. § 8113(c).

3

5. On June 23, 2011, OMB received the letter attached as Exhibit 4 from Mr. Christopher Soghoian, and assigned it OMB FOIA Request No. 11-147. The request sought a copy of all communications, documents and notes from meetings related to discussions between the Office of the U.S. Intellectual Property Coordinator and any federal agency, the National Cable and Telecommunications Association, AT&T, Verizon, Time Warner Cable, CableVision, Charter Communications, Comcast, and Qwest Communications, The Recording Industry Association of America and Motion Picture Association of America, and any individual record and movie studios regarding graduated responses to subscriber copyright infringement.

6. On September 30, 2011, OMB sent its response to Mr. Soghoian for FOIA Request No. 11-147. OMB enclosed 189 pages of responsive documents. OMB withheld portions of those documents under 5 U.S.C. §§ 552(b)(4), (b)(5) and (b)(6). OMB withheld in full an additional 16 pages under 5 U.S.C. § 552(b)(5).

7. On October 11, 2011 in response to OMB's September 30, 2011 response, Mr. Soghoian submitted FOIA appeal No. 12-011. OMB received Mr. Soghoian's appeal on October 11, 2011. OMB responded to appeal No. 12-011 on December 19, 2011 and released additional portions of 18 pages, including portions of 15 pages that were previously redacted in full. OMB withheld in full 1 page under 5 U.S.C. § 552(b)(5).

8. I have reviewed the withheld and redacted documents that are identified in the attached Vaughn index. I have personally reviewed each of these documents in the preparation of this declaration and have provided a detailed description of these documents in the attached Vaughn index.

9. The withheld and redacted documents responsive to the FOIA request relate to "graduated response" – a term commonly used to refer to internet service providers ("ISPs") taking progressively escalating responses to infringing activity. Of these documents, some relate to an agreement between private companies on actions to reduce intellectual property infringement. The documents and discussions on graduated response issues contribute to the basis for the Administration's approach to the protection of intellectual property rights and could inform future Administration actions.

10. As the IPEC, I worked on the graduated response issues that are addressed in the documents that have been withheld and redacted. Moreover, I was personally involved in some of the withheld and redacted documents, as the sender or recipient of an email communication.

11. The Vaughn index describes, in detail, the documents withheld and redacted portions, as well as the applicable Freedom of Information Act (FOIA) exemption. The withheld documents and redacted portions include pre-decisional and internal Executive Branch (interagency or intra-agency) deliberations on the graduated response issue. In its response to the FOIA request at issue in this case, OMB determined that these deliberative materials are exempt from mandatory disclosure pursuant to FOIA Exemption 5, which exempts from mandatory disclosure those documents (and portions of documents) that are interagency or intra-agency pre-decisional, deliberative materials and that do not consist of factual information that is reasonably segregable from the deliberative material.

12. The documents withheld pursuant to FOIA Exemption 5 fit into three main categories: (1) discussions regarding the general principles for an Administration response to voluntary agreements reached between ISPs and content holders to reduce online piracy,

including discussion of a draft memorandum explaining those principles (OMB Nos. 34, 37-48); (2) discussions of IPEC's Joint Strategic Plan (OMB Nos. 35, 51-58); and (3) a question on the status of France's response to piracy issues (OMB No. 33).

13. The first category consists of emails between various agencies and components of the Executive Office of the President regarding the nature of the general principles for an Administration response to an agreement that was under consideration and might be reached between ISPs and content holders to reduce online piracy, the manner in which they should be expressed, and the content of a memorandum providing information about those principles and how they would inform an Administration response. It also includes drafts of the memorandum, as well as a draft of the principles. In these emails and drafts, employees were engaging in deliberative conversations in order to help determine the Administration's response to an ongoing policy issue.

14. The second category consists of emails that discussed IPEC's Joint Strategic Plan, which was made public once it was finalized, and is available on OMB's website (http://www.whitehouse.gov/omb/intellectualproperty). Discussions about the draft Plan involved issues related to general principles for the Administration to encourage and respond to voluntary agreements to reduce online piracy and counterfeiting, including the nature of the Administration's response to "graduated response." In these emails, employees were engaging in deliberative conversations regarding draft documents in order to help determine the Administration's response to an ongoing policy issue.

15. The third category consists of a single two-line email in which I posed a question to colleagues within the Executive Office of the President on the status of France's response to

6

piracy issues. OMB has released the email and redacted only the portion that explains to my colleagues the reason I asked this question.

**16.** Having reviewed the documents described in the Vaughn Index, and having been the sender or recipient of many of them, it is my firm belief that release of the documents that have been withheld, and of the portions that have been redacted, pursuant to FOIA Exemption 5 would inhibit the frank and candid exchange of information and expression of ideas, both within OMB as well as between OMB and other Executive Branch agencies and offices. Based on my service since December 2009 as the IPEC, and on my several years of prior service at the Office of the US Trade Representative (which, like IPEC and OMB, is also within the Executive Office of the President), I can attest that it is critical for the Executive Branch's decision-making process that there be a frank and candid exchange of views within the Executive Branch, and especially within the EOP, and that the disclosure of the internal deliberative materials that have been withheld in this case (and of similar such deliberative materials) would substantially inhibit and chill the internal deliberations of OMB officials and staff, as well as those of other Federal agencies and offices, that are an essential part of carrying out their respective missions and responsibilities. Furthermore, release of the withheld documents and redacted portions would disclose the mental processes of the Executive Branch officials and employees involved.

**17.** The assurance of confidentiality for the deliberative work carried out by OMB's officials and staff is of great concern to OMB. In addition to the intellectual property-related work that is the focus of the IPEC, OMB is involved in the consideration of issues covering a wide range of subjects (e.g., energy, national defense, law enforcement, housing, medical care, transportation). OMB official and staff gather information (generally, by attending meetings, making phone calls, sending e-mails, or reviewing documents), then brief decisionmakers on

what they have learned and what course of action they recommend. The summaries, discussions, advice, and recommendations, such as those contained in the withheld documents and redacted portions, are vital to informed decisionmaking by OMB officials and, in turn, the President they serve. In addition, because OMB officials and staff work so closely with officials and staff from the White House and other parts of the EOP and the Executive Branch, the deliberative work carried out by OMB officials and staff is vital to informed decisionmaking by the White House, by other EOP offices, by Executive Branch agencies, and ultimately the President.

18. In this regard, one of OMB's principal functions is to ensure that the Executive Branch agencies' actions are consistent with the President's policies and that they take into account the views and concerns of other Executive Branch agencies and offices. This process involves extensive and close collaboration with the White House and other Executive Branch agencies, including obtaining from and providing to those agencies analysis, views, and recommendations regarding the matters being considered. To the extent that disagreements arise, and this frequently occurs, they need to be resolved through interagency discussions. OMB's work often involves those Executive Branch processes by which the Administration considers alternative, and often competing, policy options and determines what actions an agency (or the Executive Branch) should take or what its position should be on a policy matter.

19. The effectiveness of the Executive Branch deliberative processes in which OMB participates depends on OMB preserving an environment in which Executive Branch officials and employees can explore policy options thoroughly and present their views, concerns, and recommendations candidly and freely. In order to ensure that the full range of policy and legal options are identified, and that their respective merits are thoroughly considered, Executive Branch officials and staff must feel free to explore options that may be controversial, or that

involve the consideration of competing values, and the officials and staff must feel free to express to each other their analysis and judgment regarding these options. Officials and staff in OMB and elsewhere in the Executive Branch provide their analysis, judgment, and recommendations to each other in a frank and candid manner because they do so with the assurance that OMB will maintain the confidentiality of these deliberations.

**20.** Based on my experience as the IPEC and my prior service at the Office of the US Trade Representative, it is my firm belief that the release by OMB of the withheld documents and redacted portions, identified in the Vaughn index, would be contrary to the public interest. The frank exchange of information and ideas among Executive Branch officials and employees would be very seriously inhibited if Executive Branch officials and employees believed that their candid comments, drafts, materials, analyses, views, and recommendations would not be kept confidential but instead would be released. Disclosure of these deliberative materials would reveal aspects of OMB's evaluative process and the manner in which relevant opinions and recommendations were formed. It would also reveal the opinions and recommendations themselves. OMB and other participating Executive Branch officials and staff would be inclined to temper their candor if they anticipated subsequent inquisition (as a result of their release by OMB) regarding those comments, drafts, materials, analyses, views, and recommendations. Thus, the anticipation that their deliberations would be disclosed would greatly impair the free exchange of information and ideas within OMB, as well as the free exchange of information and ideas between OMB and the White House, the other parts of the EOP, and the agencies throughout the Executive Branch. The quality of Executive Branch decision-making would suffer greatly as a result.

21. OMB conducted a careful, line-by-line review of each document withheld in full and in part to determine that there was no reasonably segregable factual or non-deliberative information responsive to plaintiff's request.

22. Finally, to the extent that any information in the withheld documents and redacted portions is "factual" in nature, such "factual" information is not reasonably segregable from the overall deliberative nature of these documents. Moreover, the recitation of specific "facts" in these documents itself reflects the subjective judgment of the document's author that the particular "facts" are sufficiently significant to warrant mention. In other words, the very confirmation of their selection for the reader's attention would reflect the judgment of the author as to their relative importance and the implicit recommendation that the reader pay attention to them.

23. Thus, for the above reasons, I have determined that the withheld documents and redacted portions have been appropriately withheld under FOIA Exemption 5, and that that their release would be contrary to the public interest.

24. In addition to information withheld under FOIA Exemption 5, the responsive records included emails sent to me by an executive at the Recording Industry Association of America and an executive at Universal Music Group. These emails provided preliminary drafts of a contractual agreement known as the Memorandum of Understanding (MOU). Portions of the MOUs were redacted as confidential commercial information under Exemption 4.

25. IPEC did not request or demand that the redacted commercial information be provided, nor would it have the authority to compel the provision of that information. The information was provided as part of a general request to keep IPEC informed of these activities on a voluntary basis, and was not a formal request made pursuant to legal authority.

26. Finally, OMB redacted nonresponsive material on pages also containing responsive material in seven instances. First, in four instances OMB redacted emails or portions of emails regarding unrelated policy matters that were part of responsive emails or email chains. Second, in three instances OMB redacted emails involving only communications between OMB employees. Emails between OMB employees are not responsive to the FOIA request, because such emails did not involve individuals from other agencies (i.e. outside of OMB) or any external parties and thus did not constitute "communications, documents and notes from meetings related to discussions between the Office of the U.S. Intellectual Property Coordinator and any federal agency, the National Cable and Telecommunications Association, AT&T, Verizon, Time Warner Cable, CableVision, Charter Communications, Comcast, and Qwest Communications, The Recording Industry Association of America and Motion Picture Association of America, and any individual record and movie studios regarding graduated responses to subscriber copyright infringement."

In accordance with 28 U.S.C. §1746, I hereby declare and affirm under penalty of perjury that the foregoing is true and correct.

Executed on: 4/26/2012

Victoria Espinel